# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| PENGEMS, LLC | § | |
| | § | |
| | § | |
| v. | § | 1:17-CV-1018-LY |
| | § | |
| SHANNON MORGAN, d/b/a | § | |
| COUTURE PENS | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss (Dkt. No. 12), Plaintiff's Response (Dkt. No. 13), and Defendant's Reply (Dkt. No. 15). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff PenGems, LLC brings this suit against Defendant Shannon Morgan, d/b/a Couture Pens, alleging claims for federal and common law trade dress infringement, unfair competition, and unjust enrichment. PenGems is a small business that sells "creative planners, stationary, pens, and associated items" online through its website as well as through two wholesale accounts. Dkt. No. 1 at 1, 5. It does not allow sales of its products on websites such as Etsy, Facebook, or Instagram. *Id.* at 5. PenGems' signature products—*i.e.*, its namesake—are its pens, which are marketed as containing "crystals inside the barrel and a rhinestone gem on the end." *Id.* ("The Pen With The Gem On The Top"). PenGems owns a registered trademark in the PenGems mark, as well as registered trade dress in the design of the pens. *Id.* at 6–7. The trade dress, as registered, includes

"[a] distinctive colored gem or rhinestone located on the tip of the pen, and a multitude of small crystals located inside one end of the pen and which are visible to the consumer." *Id.*

Morgan is an "individual doing business over the Internet under the name of Couture Pens." *Id.* at 8. She is alleged to sell products on online marketplace websites such as Facebook and Instagram. *Id.* According to PenGems, Morgan requested permission from PenGems to sell its products on Facebook, but PenGems declined. *Id.* at 9. Shortly after, she asked if PenGems would be opposed to Morgan selling "crystal pens," which PenGems did not oppose, so long as they did not look like those PenGems sold. *Id.* However, Morgan began advertising for sale "pens that looked almost identical to PenGems' pens" on her Facebook and Instagram pages. *Id.* PenGems accordingly notified Morgan that the pens infringed its trade dress, and requested that she refrain from selling the goods; after she refused PenGems sent her a Cease and Desist letter. *Id.* at 10. PenGems also filed a complaint with Customs and Border Protection, as well as reports of trademark infringement with both Instagram and Facebook. *Id.* Though the parties initially reached an agreement on changing a specific element of the pens (the clip), PenGems claims that the pens still infringe on its trade dress, and filed this lawsuit.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

2

plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ANALYSIS

Morgan moves to dismiss each of PenGems' claims, alleging that PenGems has failed to sufficiently plead (1) that Morgan has used PenGems' protected trade dress, and (2) that Morgan has used the allegedly infringing trade dress "in commerce.". PenGems contends that it has sufficiently pled each element of its claims.

**A.     Use of the Trade Dress**

Morgan's first argument—though not the model of clarity—appears to challenge whether PenGems has sufficiently pled (1) the elements of its protected trade dress and (2) Morgan's use of those identified elements. The arguments are intertwined and rely heavily on PenGems' trade dress prosecution history. To prove trade dress or trade mark infringement, a party must show: (1) that the mark or trade dress qualifies for protection, and (2) that the opposing party's use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir.1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001). The party must also show that its trade dress is nonfunctional, distinctive, and has acquired a secondary meaning. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir.1994). The functionality, distinctiveness, and secondary meaning of a mark or trade dress, as well as the existence of a likelihood of confusion, are all questions of fact. *Pebble Beach*, 155 F.3d at 537.

Morgan first argues that PenGems has not sufficiently identified its trade dress. In the Complaint, PenGems describes its protected trade dress as:

3

a three dimensional ball point pen, comprised of the following elements: A distinctive colored gem or rhinestone located on the top of the pen, and a multitude of small colored crystals located inside one end fo the pen and which are visible to the consumer.

Dkt. No. 1 at 6–7. PenGems further alleges that Morgan "intentionally copied almost every aspect of Plaintiff's pens, down to the smallest details, without authorization from Plaintiff." *Id.* at 10. This is clearly sufficient to identify the trade dress that PenGems is attempting to protect. *See YETI Coolers, LLC v. JDS Inds., Inc.*, 300 F. Supp. 3d 899, 907 (W.D. Tex. 2018) ("[A] plaintiff must 'articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim.'") (quoting *New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882 (S.D. Tex. 2014)); *cf. Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002) (finding that, though, "[h]ad the case proceeded further, Abercrombie would have been expected to list the elements of the designs and the unique combinations it sought to protect," its identification of the three features was sufficient to provide notice of its claim).[1]

Morgan's related point is the true crux of her motion to dismiss: she argues that, if PenGems is suing for infringement of the trade dress identified in its registration, PenGems cannot succeed on this claim because Morgan's pens do not include a "gem on the top." This argument seems to stem in part from PenGems' prosecution history before the United States Patent and Trademark Office (PTO). When seeking registration for its trade dress, PenGems allegedly claimed that its trade dress

---

[1] Morgan also mentions in her reply that PenGems has not pled a common law trade dress right "separate and apart from its registered trade dress." Dkt. No. 15 at 6. She points to the Complaint, which identifies separate causes of action for common law trade dress infringement, unfair competition, and unjust enrichment. Morgan contends that PenGems has failed to identify the elements of PenGems' alleged common law trade dress. However, PenGems has sufficiently alleged the elements of its registered trade dress, as discussed in more detail above, and has alleged that it has common law rights in the same trade dress. This is sufficient.

was distinctive due to the gem on the top, and "distinguished the competitors' pens because they '*only* contain crystals inside the pen." Dkt. No 12 at 6 (emphasis in original). Thus, Morgan contends, PenGems cannot prove infringement on its trade dress when her pens lack the most important element—the gem on the top. However, as PenGems correctly noted in its brief, courts have repeatedly refused to apply the doctrine of prosecution history estoppel to trademarks and trade dress.[2]

Morgan replies that she is not arguing that PenGems is estopped from pursuing its claim based on the prosecution history, but rather that, as a matter of law, PenGems cannot prove trade dress infringement without showing that Morgan has copied the "gem on top" element. She appears to contend—though the motion does not make this entirely clear—that there can be no likelihood of confusion as a matter of law where PenGems has stated to the PTO that its distinctive element is the gem on top, and has failed to plead that she copied this element. Courts look to eight "digits of confusion" to determine whether there is a likelihood of confusion. *Bd. of Supervisors for La. State Univ. Ag. & Mech. College v. Smack Apparel, Co.*, 550F.3d 465, 478 (5th Cir. 2008); *cf. Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (noting that the determination for likelihood of confusion is the same under federal and Texas law). These include:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of retail outlets and

---

[2] *Davis v. Lost Int'l LLC*, 2013 WL 12137103, at *1 (C.D. Cal. Apr. 8, 2013) ("Although Plaintiff's prior statements to the PTO constitute relevant evidence in the present proceedings and may prove persuasive to a trier of fact, the law does not require the Court to treat statements made during the application process as the equivalent of binding judicial admissions."); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 561 (S.D.N.Y. 1978) ("Statements made during an ex parte prosecution . . . seeking registration of a trademark do not circumscribe for all time the rights the registrant may acquire thereafter through extensive use."); *Metal Jeans, Inc. v. Affliction Holdings, LLC*, 2015 WL 3833858, at *3 (C.D. Cal. June 19, 2015) (finding that the plaintiff's statements to the Patent and Trademark Office did not foreclose it from arguing that the defendant's mark would likely cause confusion).

5

> purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, ... (7) any evidence of actual confusion, [and] (8) the degree of care exercised by potential purchasers.

*Id.* "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id.* Further, assessing the likelihood of confusion is "typically a question of fact." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

In PenGems' Complaint, it identifies its trade dress to include the gem on top together with the visible crystals located inside the pen. "Trade dress refers to the total image and overall appearance of a product . . . ." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quoting *Pebble Beach*, 155 F.3d at 536). Thus, "the inquiry does not focus on isolated elements of the dress, but on whether a combination of features creates a distinctive visual impression, identifying the source of the product." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 251 n.1 (5th Cir. 1997). Morgan fails to identify any case law which suggests that every element identified to the PTO must be present in the allegedly infringing goods. Though the lack of the gem on top, and PenGems' related statements to the PTO, are clearly relevant to the question of whether there is a likelihood of confusion, they are not dispositive. Rather, the similarity of the trade dress is only one of eight elements to be considered, and does not, as a matter of law, preclude PenGems' claims.[3] Here, PenGems has alleged that Morgan's pens are nearly identical to the protected trade dress, and further, that Morgan intentionally copied PenGems' trade dress. This is

---

[3]This is not to say that PenGems will ultimately succeed on its claim of trade dress infringement. In fact, the Court finds it difficult to see how PenGems will be able to show likelihood of confusion without this element, particularly in light of PenGems' recognition of the distinctiveness of this element when compared to other similar pens. However, this is not the question at the motion to dismiss stage. Rather, it is whether, on the facts alleged, PenGems has alleged a plausible claim for relief. Morgan has been unable to show that, as a matter of law, the lack of the gem on top precludes a finding that Morgan infringed PenGems' trade dress. This is clearly a factual question that it would be inappropriate to resolve at this stage.

sufficient to plead a likelihood of confusion. *See, e.g.*, *YETI Coolers, LLC v. Imagen Brands, LLC*, 2017 WL 2199012, at *7 (W.D. Tex. May 18, 2017) (finding that plaintiff had sufficiently pled a likelihood of confusion where it had "produced photographs showing the close similarity between the parties' products" and alleged intentional copying). As such, Morgan's first argument fails.

**B.     Use in Commerce**

Alternatively, Morgan argues that PenGems has failed to plead that she used the allegedly infringing trade dress "in commerce." The Lanham Act provides a remedy against those who "use[] in commerce" the allegedly infringing goods. 15 U.S.C. § 1125(a). The Act defines "commerce" as "all commerce which may lawfully be regulated by Congress" and further provides that "a mark shall be deemed to be in use in commerce" on goods when "the goods are sold or transported in commerce." 15 U.S.C. § 1127. Courts have held that mere advertising is insufficient to meet this requirement. *See Central Mfg., Inc. v. Brett*, 492 F.3d 876 (7th Cir. 2007). However, use of protected trade dress on a website, together "with a picture and description of the product constitutes a display associated with goods and not mere advertising because of the 'point of sale' nature of the display." *See Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, 202 WL 43366, at *5 (S.D. Tex. Jan. 9, 2012) (quoting *Menashe v. V Secret Catalogue, Inc.*, 409 F. Supp. 2d 412, 424 (S.D.N.Y. 2006)).

Here, PenGems has alleged that Morgan "was advertising *for sale*, on Facebook and Instagram, pens that looked almost identical to PenGems' pens." Dkt. No. 1 at 9 (emphasis added). Moreover, PenGems stated that Morgan "was intending to launch the sale of the crystal pens on Facebook and Etsy on or before Friday September 29, 2017." *Id.* at 10. Thus, the Complaint alleges that the goods were offered for sale on the websites, even though it does not specifically allege that any pens were sold. This is sufficient, at this point, to allege a "use in commerce."

7

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendants Motion to Dismiss (Dkt. No. 12).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 3rd day of August, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE